Luis Alberto Mestres, Plaintiff and Appellee-Appellant, *v.* Ramón Díaz Román et al., Defendants and Appellants-Appellees.

No. 8673.   Argued April 14, 1943.—Decided May 20, 1943.

*Antonio E. Suliveres, Jr.,* and *Luis Mercader* for appellants-appellees. *E. Pérez Casalduc* for appellee-apellant.

Mr. Justice Snyder delivered the opinion of the court.

Luis Alberto Mestres owned a farm on which Ramón Díaz Román held a mortgage. The latter filed a summary proceeding to foreclose the said mortgage, obtained judgment therein, bought the property at the foreclosure sale, and went into possession thereof on October 14, 1933.

Shortly thereafter Mestres brought an action against Díaz Román for the nullity of the aforesaid proceedings, which the district court decided in favor of the defendant on June 2, 1934. On appeal, this court on July 14, 1936 reversed the said judgment (50 P.R.R. 354), remanding the case to the district court for further proceedings. On September 22, 1936, following the mandate of this court, the district court entered a new judgment declaring the aforesaid summary foreclosure proceeding null; in the same judgment the lower court refused to award Díaz Román attorney's fees, and awarded Mestres half the costs and attorney's fees of $100. Finding that the questions of costs and of attorney's fees were the only matters that could be then raised, this court on January 29, 1937 dismissed as frivolous the appeal of Díaz Román from this second judgment (50 D.P.R. 977).

However, in the meantime other events had occurred. When Díaz Román went into possession of the farm, the taxes thereon from 1927 to 1933 had not been paid. Díaz Román did not pay the said property taxes for the year 1933–34, or for the preceding years, which were still due. On October 16, 1938, the property in question was therefore sold for $746.49 to Ramón Reboyra for unpaid taxes. Mestres was notified of the said sale on February 14, 1936.

The instant suit was brought on May 21, 1940, by Mestres against Díaz Román and Reboyra, alleging that they had combined to defraud him of the property in question, and praying for the return thereof under certain conditions. After a trial on the merits, the district court entered judgment for the plaintiff, and the defendants appealed.

The plaintiff offered testimony at the trial to show that Reboyra, who had always been known simply as a workmen, was the nephew of Díaz Román; that, even after Reboyra had ostensibly become a property owner as herein described, he worked from 1939 to 1941 as a foreman for a salary of $18 a month; that Reboyra had in the same manner as herein purchased other farms at tax sales with money supplied by Díaz Román; and that the latter had in various ways in various situations conducted himself from the date he originally went into possession of the farm until the present time as the owner thereof.

Although some of the above-noted testimony was denied by the defendants, the district court chose to place credence therein. Also, the testimony was undisputed that when the property was sold in 1938 for unpaid taxes, Díaz Román had $43,000 on deposit in banks and owned property assessed at $86,000.

It is significant that the tax sale took place after the district court in 1934 had decided the nullity suit in favor of the defendant Díaz Román but while the appeal therein, which was ultimately decided in 1936 in favor of the plain-

tiff Mestres, was still pending. If the allegations and the testimony of the plaintiff, which the district court was entitled to believe, were true, the failure by Díaz Román to pay the taxes on the property and the purchase by him of the property at the tax sale, by using his workman nephew Reboyra as a dummy in the latter transaction, were an obvious hedge by Díaz Román against a possible adverse decision, which actually occurred, in the suit by Mestres for nullity of the foreclosure proceeding.

The timing of the aforesaid actions of Díaz Román was almost perfect. The testimony was that Mestres' only asset was the farm in question. By virtue of all the above maneuvers, Mestres has been out of possession of the farm from 1933 to date. It is therefore easy to understand how he would be unable to raise the money in 1935 to pay the back taxes.

The defendants nevertheless contend that, irrespective of the aforesaid facts, Mestres was notified of the tax sale on February 14, 1936, and his failure to redeem within a year bars his recovery herein. But here again the juxtaposition of time and events combined in practical effect to deprive Mestres of his right of redemption. Even if, out of possession of the property and with no clear title thereto, he had been able to raise the money for redemption, it was not until seven months of the year had expired that the district court, on September 22, 1936, entered the judgment declaring him the owner. And even that judgment was frivolously appealed by Díaz Román, and the mandate therein from this court was not filed in the district court until February 10, 1937. The district court believed, and the testimony was sufficient on which to base such a belief, that, using Reboyra as a dummy, Díaz Román had contrived both to prolong the foreclosure litigation and to purchase the property at the tax sale in order that he would wind up with the property, no matter what the result of the litigation

might be. The district court found that keeping the legal issue in doubt and thus keeping Mestres off the property until a few days before his right of redemption expired, under all the circumstances, fraudulently deprived the latter in practical effect of his right of redemption, and we see no reason to disturb that conclusion.

There are other straws in the wind belying the assertion of Díaz Román that he had lost all connection with the property after the tax sale thereof to his nephew. Long after the said tax sale, Díaz Román was still pressing his frivolous appeal from the second judgment against him in the foreclosure proceeding. And in December of 1936, when Mestres, struggling to obtain possession of his property, wrote Díaz Román offering, in view of the judgment in the district court in his favor, to pay the original mortgage and interest and the purchase price paid at the tax sale, Díaz Román, instead of replying that he was no longer involved in the situation, answered that the judgment was on appeal, and that he wanted to wait until it was finally decided before making a decision.

Díaz Román, although he was theoretically out of the picture, refused to abide by the second judgment which was obviously dictated by the mandate of this court on the first appeal in the foreclosure proceeding, and insisted on prolonging the matter until his frivolous appeal was finally dismissed by this court on January 29, 1937. By that time the lower court found, as it was entitled to under the circumstances, that Mestres was unable to utilize his only asset —the property in question—to raise the money either to pay the mortgage or to redeem the property before the period of redemption expired, only a few days after his title and right to possession of the property became finally and clearly established by receipt in the district court on February 10, 1937 of the mandate of this court in the second appeal in the foreclosure proceeding.

We need not determine whether or not the title which Reboyra, as the straw man of Díaz Román, obtained at the tax sale was void (See *Fernández et al.* v. *Olivencia et al.,* 19 P.R.R. 311). Assuming, without deciding, that he obtained a technically clear title, we find that the circumstances of this case furnish a peculiarly apt example of the usefulness of the doctrine of constructive trusts (See *Ruiz* v. *Ruiz,* 61 P.R.R. 794, decided April 28, 1943). We therefore hold that Reboyra holds title to the property in question in constructive trust for Mestres, and must convey the same to the latter, provided Mestres complies with the conditions to be presently noted.

The plaintiff herein appealed from that part of the judgment ordering him to pay six per cent interest on the original mortgage debt from September 22, 1936, the date the district court had entered judgment declaring the foreclosure proceeding null, until May 21, 1940, the date of the filing of the complaint herein. We find no error in this conclusion; nor are we disposed to accede to the plaintiff's request to increase the amount which the lower court found as a fact were the fruits of the farm while the plaintiff was out of possession thereof. No one has raised any question about the provision of the judgment entitling Díaz Román to subtract from the fruits of the farm the amounts owed by Mestres in taxes when Díaz Román went into possession, and which were wiped out by the tax sale, and we do not disturb that, or any other portion, of the judgment.

The judgment of the district court will be affirmed.